**HOT STUFF FOOD SYSTEMS, INC., a South Dakota corporation, Plaintiff,**

v.

**GRIFFIN PETROLEUM, INC., an Arkansas corporation, and Steven H. Griffin, Defendants.**

**No. CIV 95–4064.**

United States District Court, D. South Dakota, Southern Division.

July 10, 1995.

ed and cause thereof. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 366 (Mo.Ct.App.1993).

Mark J. Welter, Woods, Fuller, Shultz & Smith, Sioux Falls, SD, Jeffrey F. Shaw, James J. Long, Briggs & Morgan, St. Paul, MN, for plaintiff.

Douglas E. Hoffman, Gibbs, Feyder, Myers, Peters & Hoffman, Sioux Falls, SD, Jim Lyons, Lyons & Emerson, Jonesboro, AR, for defendants.

## MEMORANDUM OPINION AND ORDER ON JURISDICTION AND VENUE

PIERSOL, District Judge.

Pending before the Court for ruling is the Motion To Dismiss For Improper Venue And Lack Of Personal Jurisdiction Or, In The Alternative, For Change Of Venue filed by defendant Griffin Petroleum, Inc. In the Order filed June 12, 1995, the Court dismissed individual defendant Steven Griffin for lack of personal jurisdiction.

The parties completed the discovery permitted by the Court. On July 3, 1995, plaintiff filed a Memorandum In Opposition To Defendant's Motion To Dismiss Or, In The Alternative, For Change Of Venue, as well as the affidavits of Steve Watkins and Jeffrey F. Shaw. Plaintiff also moved for a preliminary injunction on the same date. Defendant has not yet had sufficient time to respond to plaintiff's filings in writing. In an effort to conserve judicial resources, save the parties litigation time and expense, and expedite this matter, however, the Court determines that a proper ruling on the motion to dismiss can be made on the record as it currently exists without conducting the evidentiary hearing that was scheduled for Monday, July 10, 1995.

For the reasons discussed below, the Court holds that plaintiff has made a prima facie showing of personal jurisdiction over defendant, but that the proper venue for plaintiff's claims is the Eastern District of Arkansas.

Thus, the Court will grant defendant's alternative motion for change of venue and deny defendant's motion to dismiss.

## I. Personal Jurisdiction

■ "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." *Dakota Indus. v. Dakota Sportswear*, 946 F.2d 1384, 1387 (8th Cir. 1991), *appeal after remand*, 988 F.2d 61 (8th Cir.1993). Jurisdiction need not be proved by a preponderance of the evidence until trial or until the Court holds an evidentiary hearing. *Id.* If the Court does not hold a hearing and relies on pleadings and affidavits, the Court must consider the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in favor of that party. *Id.* Based upon all of the affidavits, deposition excerpts, and documents contained in the record, the Court finds that plaintiff makes a prima facie showing of personal jurisdiction over defendant.

It is undisputed that defendant Griffin Petroleum, Inc., is a closely held Arkansas corporation that has never had any property, residence, domicile, address, office, telephone listing, or bank account in South Dakota. The directors and shareholders of Griffin Petroleum are Reuben and Virginia Griffin, and their son, Steven Griffin, who serves as President of the corporation. Griffin Petroleum does not sell goods or services in South Dakota, and the corporation does not advertise its goods or services in this state. Griffin Petroleum operates twelve retail gasoline outlets and convenience stores under the Coastal C–Mart brand name and maintains eight or nine dealer accounts, all in Arkansas.

Plaintiff Hot Stuff Food Systems, Inc., is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota. Hot Stuff is a food service business that operates through a system of licensed and franchised outlets and several company-owned outlets. As of February 1, 1995, Hot Stuff had 810 retail outlets in 34 states. Hot Stuff manufactures and distributes to its outlets a proprietary line of pizza products under the "Hot Stuff" name, a proprietary line

of submarine sandwich and related deli products under the "Smash Hit" name, and a proprietary line of Mexican food under the "Two Joe's Tacos" name.

Former Vice–President of Griffin Petroleum, Geron Vail, testified at his deposition that Hot Stuff representatives contacted him many times in late 1991 and 1992 about a potential licensing arrangement, but that Griffin Petroleum did not become interested until after Vail and Steven Griffin visited Hot Stuff licensed facilities in Missouri. (Shaw Aff., Ex. D at 11–12.) Plaintiff and defendant entered into a ten-year license agreement in January 1992 for the sale of Hot Stuff Pizza at defendant's convenience store in Bay, Arkansas. (Shaw Aff., Ex. A.) Steven Griffin handled all contract negotiations in Arkansas, and he or Geron Vail executed the license agreement, exhibits, and addenda on behalf of Griffin Petroleum in Arkansas. (Griffin Aff. at 1.) Vail testified that he dealt with various members of the Hot Stuff staff and did not have one contact person. (Shaw Aff., Ex. D at 13–14.) Between November 1992 and January 1994, the license agreement was subsequently amended to add five additional convenience store locations operated by defendant in Jonesboro, Black Rock, Bono, and Tyronza, Arkansas, and to add the "Smash Hit" and "Two Joe's Tacos" food lines.

In late October 1992, Geron Vail visited the Hot Stuff headquarters in Sioux Falls, South Dakota, where he met Hot Stuff executives and employees personally, looked at new products, concepts, and packaging, and toured the facilities. (Id. at 17–18.) Immediately following his visit, Vail wrote a letter to Hot Stuff's National Sales Manager in Sioux Falls, Tom Kaspar, thanking him for the visit and expressing his positive impression of the Hot Stuff operation. (Id. at 18; Watkins Aff., Ex. A.) Vail and Steven Griffin communicated with Hot Stuff personnel in South Dakota by mail, telephone, and fax. (Shaw Aff., Ex. D at 19; Ex. E at 29.) In 1993, Steven Griffin and his mother, Virginia Griffin, who formerly managed one of the convenience stores in Arkansas, visited Hot Stuff's headquarters in South Dakota. (Shaw Aff., Ex. E at 64.) Following this visit, Griffin Petroleum added the "Smash Hit" food line to its stores. (Id. & Ex. F at 8.)

Griffin Petroleum purchased equipment from Hot Stuff in Sioux Falls that was necessary to set up Hot Stuff outlets in the Griffin Petroleum convenience stores in Arkansas. (Shaw Aff., Ex. D at 21.) Griffin Petroleum filed regular financial reports with Hot Stuff in South Dakota, as well as insurance and sales tax exemption forms. (Shaw Aff., Ex. E at 39; Watkins Aff. at ¶ 11.) Pursuant to customary practice, Griffin Petroleum contacted Hot Stuff headquarters in South Dakota bi-weekly to order food supplies, Hot Stuff shipped the food products from South Dakota to Arkansas, and Griffin Petroleum sent check payments for the goods to South Dakota upon receipt of billing invoices from South Dakota. (Id., Ex. D at 21–22; Watkins Aff., Ex. B.) Through this procedure, Griffin Petroleum paid Hot Stuff for food deliveries totaling $186,667 in 1993 (April to December), $411,113 in 1994, and $49,575 for the first two months of 1995. (Watkins Aff. at ¶ 6.) Hot Stuff claims that additional 1995 invoices in the amount of $24,112 remain unpaid. (Id.) On February 14, 1995, Steven Griffin sent a letter to a Hot Stuff executive in South Dakota attempting to terminate the license agreement effective March 13, 1995. (Watkins Aff., May 3, 1995, Ex. A.) Since then, Griffin Petroleum has sold Pizza Inn Express food products from its convenience store locations.

The determination of whether the Court has personal jurisdiction over a defendant is normally a two-step analysis. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir.1995). First, the applicable state long-arm statute must be satisfied and second, the Court's exercise of jurisdiction must comport with due process. *Id.* In South Dakota, this analysis collapses into one step: the due process analysis. *See Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 921 (8th Cir.1995) ("South Dakota applies its long-arm statute to the fullest extent permissible under the Fourteenth Amendment"). Due process allows a Court to exercise personal jurisdiction over a

non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice and if the defendant has sufficient "minimum contacts" with the forum state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The contacts are sufficient if the defendant "should reasonably anticipate being haled into court there," *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. at 567, because it has performed " 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.' " *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). The inquiry is whether the defendant has directed his activities at residents of the forum and the litigation arises out of those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182; *Northrup King Co.,* 51 F.3d at 1387.

■ To evaluate jurisdiction under the due process clause, the Court must consider five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Northrup King Co.,* 51 F.3d at 1387–88. The latter two issues are secondary and of less importance than the first three factors. *Id.* Because the first three factors are closely interrelated, the Court may consider them together. *Id.* The Court should consider the defendant's contacts with the forum in the aggregate; the Court should look at the totality of the circumstances. *Id.*

■ The Court finds that Griffin Petroleum executives and personnel had more than sufficient contacts with the forum state of South Dakota to justify the exercise of personal jurisdiction over the defendant corporation. Geron Vail, Steven Griffin, and Virginia Griffin visited South Dakota, met Hot Stuff personnel, toured facilities, and attended meetings. Corporate personnel carried on numerous and continuous contacts with Hot Stuff staff by mail, telephone, and fax from 1992 until March of 1995. *See id.* at 1388. Steven Griffin's visit was instrumental in causing Griffin Petroleum to add a food line to its license agreement, thus increasing the volume of communications between the companies. The Court finds that these contacts were not random, sporadic, or attenuated. Moreover, this cause of action arose from Griffin Petroleum's contacts with the forum state, and Griffin Petroleum's actions in attempting to terminate the license agreement and in selling competing Pizza Inn Express products from its facilities in Arkansas could be viewed as " 'performed for the very purpose of having the[ ] consequences felt in the forum state.' " *Dakota Indus.,* 946 F.2d at 1390–91 (quoted case omitted; discussing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). There is an important interest in providing Hot Stuff, a South Dakota corporation, with a forum in the state where Hot Stuff resides and maintains its corporate headquarters, but the convenience to the parties is a neutral factor, as the burden in requiring Griffin Petroleum to defend here is no greater than requiring Hot Stuff to proceed in Arkansas. Giving more weight to the first three factors, the Court holds that plaintiff has made a prima facie showing of personal jurisdiction sufficient to defeat defendant's motion to dismiss.

## II. Venue

Defendant also moves to dismiss, however, on the basis that South Dakota is an improper, not merely an inconvenient, venue for this cause of action. Plaintiff asserts both diversity and federal question jurisdiction in the complaint under 28 U.S.C. §§ 1331, 1332, 1367, and 15 U.S.C. §§ 1116–17, and the Court finds that both bases of subject matter jurisdiction exist. In Count I, plaintiff claims breach of the license agreement and seeks enforcement of the six-month non-competition clause. In Count II, plaintiff asserts infringement and unfair competition violations under the Lanham Trademark Act, 15

U.S.C. §§ 1114(1), 1125(a). In Count III, plaintiff seeks payment of amounts it claims are due under the license agreement.

■ Jurisdiction and venue are separate questions. *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 760 F.2d 312, 315 (D.C.Cir.1985); *Woodke v. Dahm,* 873 F.Supp. 179, 196 (N.D.Iowa 1995). Defendant argues that the proper venue in a Lanham Trademark Act case is where the "passing off" occurred, and in this case, the Court finds that all "passing off" occurred in Arkansas. The record contains no evidence that defendant committed Lanham Trademark Act violations in South Dakota. Defendant argues, then, that venue is proper only in the Eastern District of Arkansas under 28 U.S.C. § 1391(b). Plaintiff argues that once the Court exercises personal jurisdiction over defendant, then venue is proper in South Dakota under 28 U.S.C. § 1391(c); *Dakota Indus.,* 946 F.2d at 1392.

The large majority of courts that have considered the venue question in Lanham Trademark Act cases have held that proper venue lies where the "passing off" occurred. *See Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 293–95 (3d Cir.1994); *Woodke,* 873 F.Supp. at 197–199 (collecting cases). *Cf. Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership,* 34 F.3d 410 (7th Cir.1994) (distinguishable on the basis that the court there held "passing off" would eventually occur in forum state, while here, potential "passing off" in South Dakota would not occur). This case is also different than *Dakota Industries,* where the Eighth Circuit observed that "passing off" occurred in South Dakota, the forum state, as well as in California. Thus, the Court follows this traditional rule to hold that the proper venue for this action is in Arkansas.

■ The Court's decision that venue properly lies in the Eastern District of Arkansas does not change because plaintiff asserts an independent basis for diversity jurisdiction. Plaintiff's contract claim for breach of the non-competition clause of the license agreement is very closely intertwined with plaintiff's claim of unfair competition under the Lanham Trademark Act. Under § 1391(b)(2), venue is proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" In this case, the Court finds that a substantial part of the events giving rise to the diversity claim of breach of the non-competition clause and to the federal question claim of unfair competition under the Lanham Trademark Act occurred in Arkansas. The breach and any trademark infringement or unfair competition occurred in Arkansas, as that is where the contract was to be performed. *See ServiceMaster Co. v. Ramsay,* 690 F.Supp. 704, 705 (N.D.Ill.1988) (transferring venue under former version of § 1391(b) where franchise agreement was performed in Nebraska and breach of contract and trademark infringement occurred in Nebraska). Therefore, the Court holds that the proper venue for this action is the Eastern District of Arkansas. Pursuant to defendant's alternative request, the Court will transfer venue to that District in the interest of justice, as plaintiff currently has pending a motion for preliminary injunction that deserves prompt consideration. Accordingly,

IT IS ORDERED:

(1) that defendant's Motion To Dismiss For Improper Venue And Lack Of Personal Jurisdiction Or, In The Alternative, For Change Of Venue (Doc. 9) is denied in part, as the Court finds that it may exercise personal jurisdiction over defendant Griffin Petroleum and that dismissal for improper venue is not warranted under the circumstances; however, the Court grants the motion to the extent that this action will be transferred to the Eastern District of Arkansas in the interest of justice under 28 U.S.C. § 1406(a).

(2) that the Clerk of the Court will promptly transfer this action to the Eastern District of Arkansas pursuant to this Order.